IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

STEPHEN L. BRADLEY,

                             Plaintiff,

           vs.                              Civil Action No.
                                            7:05-CV-1558 (NAM/DEP)

MICHAEL J. ASTRUE, Commissioner of
Social Security,[1]

                             Defendant.

_____

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF:

LEKKI, HILL LAW FIRM          PAUL M. FISCHER, ESQ.
21 Court Street
P.O. Box 469
Canton, New York 13617

FOR DEFENDANT:

HON. GLENN T. SUDDABY      WILLIAM H. PEASE, ESQ.
United States Attorney            Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street

_____

        [1]      Plaintiff's complaint, which was filed on December 14, 2005, named Jo Anne B. Barnhart, the former Commissioner of Social Security, as the defendant.  On February 12, 2007, Michael J. Astrue took office as Social Security Commissioner.  He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change.  *See* 42 U.S.C. § 405(g).

Syracuse, New York  13261-7198

OFFICE OF GENERAL COUNSEL    BARBARA L. SPIVAK, ESQ.
Social Security Administration    Chief Counsel, Region II
26 Federal Plaza
New York, New York 10278    SHEENA V. BARR
    Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Stephen L. Bradley, who suffers from a cervical spine condition and low back pain, has commenced this proceeding seeking judicial review of the denial of his application for disability insurance benefits ("DIB") under the Social Security Act.  In support of his challenge, plaintiff maintains that the Administrative Law Judge ("ALJ") who heard the matter at the agency level and determined that he is not disabled improperly rejected the opinions of his treating physician, and instead assigned undue weight to the opinions of non-treating sources.  Plaintiff also contends that the ALJ improperly rejected his testimony regarding the pain and other limitations which he experiences as a result of his medical condition, and erred in applying the medical-vocational guidelines (the "grid") set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, to support a finding that he is not disabled instead of eliciting testimony from a vocational expert to determine whether he is

capable of performing jobs existing in the national economy.

Having carefully reviewed the record now before the court, I find that the Commissioner's determination resulted from the application of proper legal principles, and is supported by substantial evidence.

I.    BACKGROUND

A.    General Background

Plaintiff was born on October 27, 1959; at the time of the administrative hearing, he was forty-five years old.  Administrative Transcript at 213.[2] During the period at issue, plaintiff lived alone in an apartment in Ogdensburg, New York.  AT 50, 74, 231.  Plaintiff is a high school graduate, and has undergone additional specialized vocational training in the fields of automotive technology and carpentry.  AT 58.

Plaintiff last worked in September 2003 as a machine operator in a factory warehouse.  AT 54, 63, 215, 220-221.  In that capacity, plaintiff's duties included operating heavy machinery, such as a forklift, and working on a computer.  AT 64, 216.  Prior to that time, Bradley was employed as a heavy equipment technician, and as an automobile mechanic.  AT 63,

_____

[2]    Portions of the administrative transcript of proceedings and evidence before the agency, which was filed by the Commissioner in the action, Dkt. No. 4, will be cited as "AT ___."

214-215.

B.    Treating Sources

As early as 2001, plaintiff complained of experiencing pain and

discomfort in his low back and left arm to S. Michael Ditta, a registered

physician's assistant ("PA") at Seaway Health Care in Ogdensburg, New

York.  AT 108-109; *see also* 107-136.  PA Ditta's progress notes, however,

reflect that plaintiff voiced no further similar complaints until July of 2003,

when he complained of left shoulder pain that radiated down to his elbow.

AT 115-116.  At that time, plaintiff reported that he had experienced the pain

over the past couple of weeks, and that it was not preceded by any injury.  *Id*.

An x-ray of plaintiff's cervical spine, taken on July 9, 2003, showed no

evidence of a fracture or dislocation; it did, however, reveal "early calcification

of [the] left carotid bulb."  AT 120.

On July 28, 2003, PA Ditta noted that plaintiff had a decreased amount

of parathesias in his neck, but continued to exhibit parathesias in the left

upper extremities.  AT 117.  An exercise stress test performed on August 8,

2003 showed normal results.  AT 121.  On September 3, 2003, it was noted

that plaintiff had recently undergone magnetic resonance imaging ("MRI")

testing of the cervical spine, which revealed spondylosis at levels C2-C6-C7

-4-

and radiculitis "from the left upper extremity and to a mild extent down the right upper extremity." AT 118. At that point, PA Ditta diagnosed plaintiff as suffering from severe spondylosis of the cervical spine and radiculitis. *Id.*

Between October of 2003 and January of 2005, plaintiff saw Dr. Michael B. Lax, of Central New York Occupational Health Clinical Center in Syracuse, New York, for purposes of his open workers' compensation case. AT 151-155, 199-200. During that time, Dr. Lax recorded plaintiff's complaints of neck, arm, and low back pain; headaches; numbness in his hands, left arm, and right leg; weakness in his left leg; and difficulty sleeping. AT 151-154, 186, 199. The doctor also noted that plaintiff used ibuprofen for pain relief. *Id.* Dr. Lax diagnosed plaintiff as suffering from cervical radiculopathy and myelopathy, as well as lumbar radiculopathy. AT 200.

On January 5, 2005, Dr. Lax completed a medical source statement in which he indicated that plaintiff is limited to lifting and carrying between ten and twenty pounds occasionally, and standing and/or walking less than two hours in an eight-hour workday, and additionally noted that he must alternate periodically between sitting and standing. AT 193-194. Dr. Lax also reported that plaintiff retains a limited ability to push and pull using his upper and lower extremities; that he can never climb, kneel, crouch, crawl, or stoop; and that

he can occasionally perform manipulative functions such as reaching, handling, fingering, and feeling.  AT 194-195.

On January 6, 2005, Dr. Lax completed a pain assessment, noting his opinion that plaintiff's pain is incapacitating; that physical activity greatly increases plaintiff's pain causing abandonment of tasks related to daily activities or work; and that medication impacts plaintiff's work ability to the extent that he is restricted from the workplace and unable to function at a productive level.  AT 197.

C.   Consultative Examiners

In addition to receiving the foregoing treatment for his various physical conditions, plaintiff has been examined consultatively on several occasions. Plaintiff was examined by Dr. Jamie Hynd, a cardiologist, on July 14, 2003. AT 137-138.  Dr. Hynd noted plaintiff's "atypical symptoms of left shoulder pain going into his back."  AT 137.  Dr. Hynd failed to discern the existence of any abnormalities during his sensory motor and musculoskeletal examinations.  AT 138.  Dr. Hynd also found that an electrocardiogram showed "normal sinus rhythm with T-wave changes in his lateral leads."  AT 137.  Dr. Hynd opined that plaintiff's condition "is likely a non-cardiac problem."  AT 138.

Plaintiff also was examined consultatively by Dr. J. Lucas Koberda, a neurologist, on August 22, 2003.  AT 139-145.  Dr. Koberda performed nerve conduction studies of plaintiff's left upper extremity, revealing normal results and no major abnormalities.  AT 140.  An MRI of the cervical spine, however, showed cervical spondylosis at the C2-3 through C6-7 levels though most pronounced "at the C3-4 through C6-7 levels where they are secondary to a congenitally small spinal canal and disk bulges or herniations."  AT 142.

Plaintiff also was examined consultatively by Dr. John Krawchenko, a neurosurgeon, on September 10, 2003.  AT 146-148.  Based on his examination, Dr. Krawchenko opined that "clinically, [plaintiff] is not physically dysfunctional."  AT 148.  Dr. Krawchenko recommended, however, that plaintiff undergo an MRI of the lumbar spine and that he stop working due to the condition of his spine and nerves in his neck and lower back.  AT 148.  Dr. Krawchenko suggested that plaintiff not overuse his arm or lift more than five to ten pounds, and recommended against prolonged use of the arm and hand, as well as any activity that could cause trauma to his body.  *Id.*  An MRI of plaintiff's lumbar spine area subsequently performed revealed severe degenerative disc disease with diminished disc height at all levels, and a right paracentral disc osteophyte complex at L4-5 and L5-S1.  AT 149.

A further consultative examination of the plaintiff was conducted by Dr. Satish Krishnamurthy, a neurosurgeon, on November 18, 2003.  AT 165-167. Based upon his examination, Dr. Krishnamurthy diagnosed plaintiff as suffering from cervical spondylosis resulting in neck pain; left sided hemisensory loss, possibly of non-physiologic character; and low back pain due to lumbar spondylosis, and further opined that plaintiff was not a candidate for any surgical procedure at the time.  AT 167.

Plaintiff was further examined consultatively, apparently for the workers' compensation insurance carrier, by Dr. George Mina, an orthopedic surgeon, on December 19, 2003.  AT 168-169.  In his notes of that examination, Dr. Mina wrote that plaintiff complained of pain in his neck, radiating down the left arm, and numbness in certain fingers of his left hand.  AT 168.  It was also noted that plaintiff stated that his current treatment consisted of over-the-counter medication.  *Id.*  As a result of his examination, Dr. Mina diagnosed plaintiff as suffering from cervical spondylosis with left nerve root radiculitis and he opined that plaintiff had a mild partial disability, but that he was capable of returning to work with some restrictions, including avoidance of overhead work and lifting less than thirty pounds only to shoulder level.  AT 169.

### D.   Agency Consultative Examiner

Plaintiff also was examined consultatively on May 25, 2004, at the request of the agency, by Dr. Kalyani Ganesh, an orthopedic specialist.  AT 170-173.  Based on his evaluation, Dr. Ganesh diagnosed plaintiff as suffering from severe degenerative disk disease of the lumbosacral spine and cervical spondylosis of C2-C3 to C6-C7.  AT 172.  Dr. Ganesh further opined that plaintiff's prognosis is guarded and that he has a moderate degree of limitation in sitting, standing, walking, and climbing, as well as a moderate-to-severe limitation in lifting, carrying, pushing, pulling, and repetitive use of the upper extremities.  *Id.*

### E.   RFC Assessment

In addition to the opinions of those treating and consultative sources, the record also contains a physical residual functional capacity ("RFC") assessment completed by Karla Miller, a disability examiner, on June 4, 2004.  AT 174-179.  In that assessment, Ms. Miller reported her opinion that despite his physical condition, plaintiff retains the abilities to lift and/or carry up to twenty pounds occasionally, and up to ten pounds frequently; and to stand and/or walk, and to sit, for about six hours in an eight-hour workday. AT 175.  Ms. Miller also indicated that plaintiff has a limited ability to push

and pull using his lower extremities.  *Id.*  Addressing the issue of potential

postural limitations, the examiner noted that plaintiff is limited to occasionally

climbing, stooping, crouching, and crawling.  AT 176.  Mr. Miller also reported

that plaintiff is limited in his ability to reach in all directions, including

overhead.  *Id.*

II.    PROCEDURAL HISTORY

    A.    Proceedings Before The Agency

Plaintiff filed an application for DIB on March 5, 2004, alleging a

disability onset date of September 10, 2003.  AT 48-50.  That application was

denied on June 4, 2004.  AT 25-29.

At plaintiff's request, a hearing was conducted on January 7, 2005

before ALJ Elizabeth W. Koennecke to address his claim for benefits.  AT

208-233.  Plaintiff appeared at that hearing, represented by counsel, and

testified on his own behalf.  *See id.*

Following the hearing, ALJ Koennecke issued a decision dated June

14, 2005.  AT 12-24.  In her decision, ALJ Koennecke conducted a *de novo*

review of the record, applying the now-familiar, five-step sequential test for

determining disability under the Act, finding at step one that plaintiff had not

engaged in substantial gainful activity since his alleged disability onset date.

AT 16.  Proceeding to the next two steps, ALJ Koennecke concluded that the evidence supported a finding that plaintiff suffers from cervical myelopathy with radiculopathy and lumbar radiculopathy, regarded by the ALJ as sufficiently severe as to satisfy the relatively modest step two requirement, but further found that those conditions do not, either singly or in combination, meet or equal any of the listed, presumptively disabling circumstances set forth in the pertinent regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1, noting that she had specifically considered the potential applicability of the listing related to disorders of the spine.  AT 19.

After reviewing the medical evidence in the record, including opinions from both treating and non-treating consultant sources, bearing upon plaintiff's physical limitations, ALJ Koennecke next concluded that plaintiff retained the RFC to perform a full range of sedentary work.  AT 22.  In arriving at the RFC determination, ALJ Koennecke rejected plaintiff's claims of disabling pain as not fully credible, particularly in view of plaintiff's daily activities and conservative course of treatment.  AT 21-22.  While the ALJ went on to find that plaintiff's limitations precluded him from returning to his past relevant work, given the exertional requirements associated with it, after applying her RFC finding and other relevant criteria to the grid, she

concluded that there is available work within the national economy which he is capable of performing, and thus determined that he is not disabled.  AT 22-23.

ALJ Koennecke's opinion became a final determination of the agency on November 16, 2005, when the Social Security Administration Appeals Council denied plaintiff's request for review of that decision.  AT 5-8.

B.   This Action

Plaintiff commenced this action on December 14, 2005.  Dkt. No. 1. Issue was subsequently joined by the Commissioner's filing of an answer, and an administrative transcript of the proceedings and evidence before the agency, on March 28, 2006 and March 29, 2006, respectively.  Dkt. Nos. 3, 4. With the filing of plaintiff's brief on May 11, 2006, Dkt. No. 5, and that on behalf of the Commissioner on July 11, 2006, Dkt. No. 9, this matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P. 72(b).[3]

---

        [3]     This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28, 1998, and later amended and reissued by then-Chief District Judge Frederick J.

III.    DISCUSSION

        A.    Scope of Review

        A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether the

correct legal standards were applied, and whether the decision is supported

by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002);

*Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d

496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y.

1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).

 Where there is reasonable doubt as to whether the Commissioner applied

the proper legal standards, his decision should not be affirmed even though

the ultimate conclusion reached is arguably supported by substantial

evidence.  *Martone*, 70 F. Supp. 2d at 148.  If, however, the correct legal

standards have been applied and the ALJ's findings are supported by

substantial evidence, those findings are conclusive, and the decision should

withstand judicial scrutiny regardless of whether the reviewing court might

have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at

_____

Scullin, Jr., on September 19, 2001. Under that General Order an action such as this
is considered procedurally, once issue has been joined, as if cross-motions for
judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure.

586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Id.*; *Martone*, 70 F. Supp. 2d at 148 (citing *Richardson*). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. §

-14-

405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may

remand the matter to the Commissioner under sentence four of 42 U.S.C. §

405(g), particularly if deemed necessary to allow the ALJ to develop a full

and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at

148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand

pursuant to sentence six of section 405(g) is warranted if new,

non-cumulative evidence proffered to the district court should be considered

at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*,

940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is

appropriate when there is "persuasive proof of disability" in the record and it

would serve no useful purpose to remand the matter for further proceedings

before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R.

Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and

Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

      B.    <u>Disability Determination - The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).   In addition,

the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists
> in the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§

404.1520, 416.920.  The first step requires a determination of whether the

claimant is engaging in substantial gainful activity; if so, then the claimant is

not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b),

416.920(b).  If the claimant is not gainfully employed, then the second step

involves an examination of whether the claimant has a severe impairment or

combination of impairments which significantly restricts his or her physical or

mental ability to perform basic work activities.  *Id.* §§ 404.1520(c),

416.920(c).  If the claimant is found to suffer from such an impairment, the

agency must next determine whether it meets or equals an impairment listed

in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.*

Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively

disabled".  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728

F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of his

or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is

determined that it does, then as a final matter the agency must examine

whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies

with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*,

728 F.2d at 584.  Once that burden has been met, however, it becomes

incumbent upon the agency to prove that the claimant is capable of

performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   The Evidence in this Case

In support of his challenge to the agency's determination, plaintiff raises

several arguments, contending that in finding no disability, the ALJ improperly

1) assigned less than controlling weight to his treating physicians; 2) discounted his subjective complaints; and 3) relied on the grid, maintaining that the Commissioner should have been required to present evidence from a vocational expert to satisfy his burden at step five of the relevant test.

      1.   <u>Treating Physician</u>

_____Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp. 2d at 316.[4]  Such opinions are not controlling, however, if contrary to other substantial evidence in the record, including the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution

---

[4]     The regulation which governs treating physicians provides:

Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

is properly entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

In her decision, the ALJ expressly rejected certain limitations set forth in the medical source statement and the pain assessment completed by Dr. Lax, explaining that the limitations noted were not supported by Dr. Lax's own objective findings, as well as other medical evidence in the record.  AT 20. The ALJ also noted that Dr. Lax's findings were contradicted by his earlier findings, and were not supported by plaintiff's very limited use of analgesics.

AT 20-21.  Plaintiff argues that the ALJ erred by failing to assign controlling weight to the opinion of his treating physician, Dr. Lax, and by elevating the opinions of non-treating physicians above those of his treating sources.

The record supports the ALJ's conclusion that Dr. Lax's restrictive RFC findings, particularly to the effect that plaintiff can stand and/or walk for only less than two hours in an eight-hour workday; must periodically alternate sitting and standing; has a limited ability to push and/or pull using his upper and lower extremities; can never climb, kneel, crouch, crawl, or stoop; and can occasionally perform manipulative functions, lack support from the clinical findings in Dr. Lax's own records.  *See* AT 20.  Indeed, during the course of seeing plaintiff, Dr. Lax noted that plaintiff's shoulders and elbows were normal with full range of motion and no tenderness, arms had intact strength and sensation, hand grip strength was 5/5 bilaterally, range of motion of the cervical spine on lateral flexion was full bilaterally as was flexion, low back was without spasm or tenderness with a full pain-free range of motion, there was no obvious muscle wasting, and that plaintiff lifts more than twenty pounds at a time.  *See* AT 151-155, 182-191, 198-200.  Moreover, Dr. Lax's progress notes reflect that plaintiff generally took only Advil or Aleve for pain relief.  *Id.*

Dr. Lax's RFC opinions are also squarely in conflict with his earlier findings that plaintiff is only limited from performing heavy lifting and is thus unable to work in his past relevant position, and his observation that vocational retraining through VESID, the New York State vocational rehabilitation program, was both recommended and undertaken by the plaintiff.  AT 151, 155, 180-181.

Dr. Lax's opinions are also manifestly inconsistent with the findings of several consultative examiners, including Dr. Koberda, Dr. Krawchenko, Dr. Hynd, and Dr. Mina.  *See* AT 20.  By way of example, Dr. Koberda found that plaintiff had normal strength in all four extremities, normal tone and fine motor movements.  AT 140.  The remainder of Dr. Koberda's examination findings generally were normal, subject only to the limited recommendation that plaintiff should avoid heavy lifting.  AT 139-140.

Based upon his examination in September of 2003, Dr. Krawchenko opined that plaintiff's symptoms were casually related to his work injury, and that the work which he was doing at the time of the examination, described to include using a bulldozer, operating heavy machinery, heavy lifting, bending and turning, was irritating the nerves in the spinal cord.  AT 147-148.  While Dr. Krawchenko recommended that plaintiff not overuse his arm or lift more

than five to ten pounds, and additionally that he avoid prolonged use of the

arm and hand and any activity that could cause trauma to his body, he also

"reassured [plaintiff] that clinically he is not physically dysfunctional and looks

fairly good compared to the pictures of his spine . . . ." *Id.*

Dr. Hynd found no neurological or musculoskeletal abnormalities during

the course of his examination of plaintiff in July of 2003.  AT 137-138.

Similarly, in December of that year Dr. Mina found that plaintiff ambulates

well, has no muscle spasm and good range-of-motion in the neck, and is

neurologically intact.  AT 168-169.  Dr. Mina surmised that plaintiff's condition

"[c]ould have been aggravated by the kind of work he has been doing . . . ,"

and further opined that plaintiff could return to work but should avoid

overhead work and lift less than thirty pounds only to shoulder level.  AT 169.

In support of his challenge of the ALJ's determination, plaintiff offers

statements of Dr. Lax and Dr. Krawchenko, suggesting to the effect that in

their views, he is totally disabled.  Dkt. No. 5 at 8-9; *see* AT 151-155, 192.

Those statements, however, address an ultimate issue of disability that is

reserved to the Commissioner, and thus are not entitled to deference even if,

in the case of Dr. Lax, they were opinions held by a treating physician.  20

C.F.R. § 404.1527(e)(1); *Snell v. Apfel*, 77 F.3d 128, 133 (2d Cir. 1999).

Moreover, those statements were clearly made in the context of determining whether plaintiff was qualified to receive workers' compensation benefits under a standard which is at variance with the disability test under the Social Security Act. *See Gray v. Chater*, 903 F. Supp. 2d 293, 301 (N.D.N.Y. 1995) (Koeltl, J.).

Based on the foregoing, I find that the failure of Dr. Lax to support his opinions, and the contrary evidence found elsewhere in the record, support the ALJ's rejection of the opinions of plaintiff's treating physician, and that rejection was properly explained and supported in the record.

## 2.    Reliance Upon Opinions of Consultants

_____Having properly rejected certain opinions of plaintiff's treating physician, the ALJ then gave some weight to the opinions of the consultative examiners, including Dr. Krishnamurthy, Dr. Mina, and Dr. Ganesh.  AT 19.  Plaintiff argues that the ALJ erred by assigning "significant" weight to these sources.

With regard to Dr. Krishnamurthy and Dr. Mina, plaintiff argues that the ALJ erred by assigning weight to their opinions, which were rendered on November 18, 2003 and December 19, 2003, respectively, because they were rendered "in advance of the Claimant's onset date."  Dkt. No. 5 at 11. The onset date assumed in plaintiff's application for DIB benefits, however, is

-23-

September 10, 2003.  *See* AT 48, 54.  This contention is therefore unavailing as a basis for discounting the reports of those examining consultants, whose opinions can provide substantial evidence to support a finding of disability.

With regard to Dr. Ganesh, a State agency consultative examiner, I note that "State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such their opinions may constitute substantial evidence if they are consistent with the record as a whole." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.) (citing *Leach ex rel. Murray v. Barnhart*, No. 02 Civ. 3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) (citations omitted)); *see also* Social Security Ruling (SSR) 96-6p, 1996 WL 374180 (S.S.A. 1996).  Accordingly, the ALJ did not err in affording some weight to the opinion of Dr. Ganesh, as he is qualified as an expert in the evaluation of medical issues in disability claims and his opinion is generally consistent with the record as a whole.

In sum, I find no error on the part of the ALJ in terms of assigning some weight to the opinions of the consultative examiners in this matter.

### 3.   Credibility

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a),

-24-

(d).  When examining the issue of pain, however, the ALJ is not required to

blindly accept the subjective testimony of a claimant.  *Marcus v. Califano*, 615

F.2d 23, 27 (2d Cir. 1979); *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*).

Rather, an ALJ retains the discretion to evaluate a claimant's subjective

testimony, including testimony concerning pain*.  See Mimms v. Heckler,* 750

F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion

the ALJ must consider a variety of factors which ordinarily would be relevant

on the issue of credibility in any context, including the claimant's credibility,

his or her motivation, and the medical evidence in the record.  *See*

*Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y.

Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-

28)).  In doing so, the ALJ must reach an independent judgment concerning

the actual extent of pain suffered and its impact upon the claimant's ability to

work.  *Id.*

When such testimony is consistent with and supported by objective

clinical evidence demonstrating that claimant has a medical impairment

which one could reasonably anticipate would produce such pain, it is entitled

to considerable weight.[5]  *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R.

---

[5]  In the Act, Congress has specified that a claimant will not be viewed as disabled
unless he or she supplies medical or other evidence establishing the existence of a

§§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the

intensity, persistence or functional limitations associated with his or her pain

is not fully supported by clinical evidence, however, then the ALJ must

consider additional factors in order to assess that testimony, including: 1)

daily activities; 2) location, duration, frequency and intensity of any

symptoms; 3) precipitating and aggravating factors; 4) type, dosage,

effectiveness and side effects of any medications taken; 5) other treatment

received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§

404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical

evidence, and any other factors deemed relevant, the ALJ may accept or

reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d at 151; *see*

*also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is

rejected, however, the ALJ must explicitly state the basis for doing so with

sufficient particularity to enable a reviewing court to determine whether those

reasons for disbelief were legitimate, and whether the determination is

supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing

*Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the

---

medical impairment which would reasonably be expected to produce the pain or other
symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

ALJ's findings are supported by substantial evidence, the decision to

discount subjective testimony may not be disturbed on court review.  *Aponte*

*v. Secretary, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir.

1984).

It may be, as plaintiff asserts, that he does suffer from some degree of

discomfort as a result of his impairments.  The fact that the plaintiff suffers

from discomfort, however, does not automatically qualify him as disabled,

since "disability requires more than mere inability to work without pain."

*Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

As can be seen from her decision, the ALJ acknowledged the existence

of severe impairments and plaintiff's accompanying allegations of pain and

limitations, but found his subjective allegations to be "overstated," based

principally upon a shortage of objective medical findings to support them.  AT

21-22.  In so finding, the ALJ discussed the somewhat conservative findings

made by Dr. Krawchenko, Dr. Hynd, and Dr. Lax.  AT 21.  Thus, for example,

the ALJ pointed to the finding by Dr. Krawchenko that while plaintiff's spinal

cord abnormalities were "probably long-standing" issues, clinically he was not

"physically dysfunctional" and looked "fairly good" compared to the pictures of

his spine.  AT 147-148.  The ALJ also noted that Dr. Hynd found no

neurological or musculoskeletal abnormalities upon examining plaintiff, AT 137-138, and further discussed that Dr. Lax opined that plaintiff was "intermittently" totally disabled "at times depending on his activity."  AT 200.

The ALJ's rejection of plaintiff's subjective statements regarding his limitations is also supported by plaintiff's own testimony.  As the ALJ noted, Plaintiff's own testimony showed his ability to perform basic daily functions, including light cooking, and at times taking laundry to a Laundromat.  AT 232. Plaintiff also testified that he took only ibuprofen to relieve his pain, and that he could lift up to fifteen pounds, and was able to sit or stand up to two hours and walk up to ten blocks.  AT 222-223, 228.  Plaintiff further stated that he was trying to attend school full-time to receive training for another occupation, such as a claims adjustor or a photographer.  AT 225-226.  The ALJ also took note that plaintiff testified that while receiving unemployment benefits he certified to state labor officials his ability and willingness to work on a full-time basis.  AT 224-225.

In light of the foregoing circumstances, I find that the ALJ's skepticism regarding the degree of pain and limitations experienced by plaintiff was both properly explained, and is supported by substantial evidence on the record.

4.    Use of Medical-Vocational Guidelines

-28-

After concluding that plaintiff is incapable of returning to his past relevant work, the ALJ turned to the grid for a determination at step five of the sequential analysis.  AT 22-23.  In doing so, the ALJ rejected the existence of nonexertional limitations of sufficient severity to preclude plaintiff from performing a full range of sedentary work and render resort to the grid, as a framework for determining the availability of jobs capable of being performed by plaintiff, unworkable.

Ordinarily, the Commissioner can meet his burden in connection with the fifth step of the relevant disability test by utilizing the grid.  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  The grid takes into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy.  *Id.* Whether or not the grid should be applied in order to make a step five determination presents a case-specific inquiry which depends on the particular circumstances involved.  *Bapp*, 802 F.2d at 605.  If a plaintiff's situation fits well within a particular classification, then resort to the grid is appropriate.  *Id.*  If, on the other hand, nonexertional impairments, including pain, *significantly* limit the range of work permitted by exertional limitations,

then use of the grid is inappropriate, in which case further evidence and/or testimony is required.[6]  *Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06.

Plaintiff argues that he suffers from several nonexertional limitations, including postural and manipulative limitations, which are set forth in the medical source statement completed by Dr. Lax.  Dkt. No. 5 at 16.  Bradley contends that these nonexertional limitations substantially erode his occupational base, making the use of the grid inappropriate.  *Id.*

As was previously determined, the opinions in the medical source statement rendered by Dr. Lax were properly rejected by the ALJ as unsupported and contrary to other evidence in the record.  *See supra* Part III.C.1.  Accordingly, since the plaintiff has failed to point to other evidence which indicates that his range of work is limited by nonexertional limitations, this claim is unavailing.  Based upon a full review of the record I find no basis to conclude that the RFC applied to the grid was not supported by substantial evidence or that the plaintiff suffers from non-exertional limitations of

---

[6]      As one court has explained,

[a] nonexertional limitation is one imposed by the claimant's impairments that affect [his or] her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain.

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569(a), (c)).

sufficient severity as to undermine usefulness of the grid as a framework for

making a step five determination of the plaintiff 's ability to perform work

available in the national and local economies.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

A review of the record in this case, conducted applying the requisite

deferential standard, reflects that the ALJ applied the proper legal standards

to the evidence in the record, and that her finding of no disability finds

sufficient support in the record.  I find that the rejection of the contrary

opinions of plaintiff's treating physician, Dr. Lax, was appropriate and

properly explained.  Additionally, I find that the ALJ appropriately evaluated

plaintiff's subjective complaints of debilitating pain, and in light of the

shortage of clinical findings to substantiate them, properly found plaintiff's

complaints to be "overstated."  Finally, I find that the ALJ properly concluded

that plaintiff did not suffer from certain nonexertional impairments, based on

opinions of Dr. Lax which were properly rejected, which would have made her

use of the grid at step five of the disability algorythm improper.

Based on the foregoing, it is hereby

RECOMMENDED, that defendant's motion for judgment on the

pleadings be GRANTED, that the Commissioner's determination of no

disability be AFFIRMED, and that plaintiff's complaint in this action be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

Dated:      July 2, 2007
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge